# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-1108

WILLIAM E. FRASURE, JR., APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 19, 2004          Decided   September 14, 2004   )

*Sandra E. Booth*, of Columbus, Ohio, for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Richard A. Cohn*, all of Washington, D.C., were on the brief, and *Debra L. Bernal*, of Washington, D.C., argued, for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and STEINBERG, *Judges*.

STEINBERG, *Judge*:  The appellant, through counsel, seeks review of a March 25, 2002, Board of Veterans' Appeals (Board or BVA) decision that denied basic eligibility for an award of Department of Veterans Affairs (VA) disability compensation benefits under 38 U.S.C. § 1110. Record (R.) at 1-6.  The appellant and the Secretary of Veterans Affairs (Secretary) each filed a brief, and the appellant filed a reply brief.  The Court heard oral argument on February 19, 2004.  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons set forth below, the Court will vacate the Board decision and remand the matter for further development and readjudication.

# I. Relevant Background

In July 1999, the appellant filed with a VA regional office (RO) an application for VA disability compensation based on asserted VA service connection for hearing loss in connection with active-duty service in the U.S. Coast Guard Merchant Marine (Merchant Marine) during World War II (WW II), as part of the crew of the *Lake Charles Victory* troop ship. R. at 17-24; *see* 38 C.F.R. § 4.87 (1998). A copy of his DD Form 214 reflects his active-duty service in the Merchant Marine from August 28, 1945, to December 31, 1946. R. at 9-10. In an August 1999 decision, the VARO concluded that it did not have jurisdiction over the appellant's claim because his DD Form 214 indicated that his service had occurred during the period from August 28, 1945, to December 31, 1946, whereas in order to qualify generally for veteran status he had to show that he had participated in active-duty service between December 7, 1941, and August 15, 1945. R. at 33.

In July 2000, the RO issued a Statement of the Case (SOC) concluding that the appellant was not recognized under the G.I. Bill Improvement Act of 1977, Pub. L. No. 95-202, § 401, 91 Stat. 1433, 1449-50 (found at 38 U.S.C. § 106 (note)) [hereinafter Public Law 95-202 § 401 or § 401], as a "veteran" who was eligible for VA compensation benefits because the period of his oceangoing service did not occur between December 7, 1941, and August 15, 1945. R. at 46. In September 2000, the appellant submitted a VA Form 9 (Substantive Appeal to the BVA) and requested a BVA hearing; he stated that his service in the Merchant Marine began on July 3, 1945, and that he first served on an oceangoing vessel on September 22, 1945. R. at 49.

At a May 2001 RO hearing, the appellant testified, under oath (1) that he was sworn into service with the Merchant Marine on July 5, 1945 (R. at 55); (2) that he thereafter began training in Sheepshead Bay, New York, including three weeks of training "sometime during July" 1945 aboard a ship (an "American Navigator training ship"), which ship went up and down the coast of the United States in foreign waters in which there were German submarines (R. at 55-56, 58); (3) that he returned to Sheepshead Bay training facility for a few days (R. at 56); (4) that he was sworn into the U.S. Coast Guard on August 14, 1945; and (5) that he was thereafter sent to Virginia for more training (R. at 56).

At the hearing, the appellant was represented by counsel (different from the counsel now representing him) who argued that the appellant is eligible for VA benefits because he had service

between December 7, 1941, and August 15, 1945. R. at 54. He also argued that as of March 17, 2000, the law had changed to include the period from December 7, 1941, to December 31, 1946, for determining whether a claimant's active-duty service established veteran status. R. at 53-54. He argued that the appellant had "continuous service" in the Merchant Marine from July 3, 1945, to July 3, 1947, including (1) service as a member of a crew on a public vessel in foreign waters for approximately three weeks beginning on July 22, 1945, and (2) service aboard an oceangoing merchant vessel from August 28, 1945, to August 12, 1947. R. at 54. At the hearing, the appellant provided, inter alia, copies of the following documents: (1) An October 1998 press release from the office of U.S. Senator Trent Lott describing the Veterans Programs Enhancement Act of 1998 (VPEA), Pub. L. No. 105-368, § 402(a), 112 Stat. 3315, 3336-37, including the section providing for "recognition and burial benefits" for members of the Merchant Marine who, inter alia, had served between August 16, 1945, and December 31, 1946 (R. at 62; *see* VPEA § 402); (2) a copy of 38 U.S.C. § 106 and statutory notes, including Public Law 95-202 § 401 (R. at 63, 64); (3) three certificates of discharge from the U.S. Coast Guard indicating, respectively, shipment dates for the appellant of August 28, 1945, September 22, 1945, and November 12, 1945, and discharge dates of September 21, 1945, October 14, 1945, and March 6, 1946 (R. at 65-67); (4) a U.S. Coast Guard "Merchant Seaman's Certificate of Identification" (the Court notes that the copy in the record on appeal (ROA) is barely legible) (R. at 70); (5) a "Record of Service" reflecting, inter alia, that the appellant enrolled on July 3, 1945, reported to training on July 5, 1945, transferred to the "Am[erican] Navigator" for three weeks on July 22, 1945, and reported to training on August 21, 1945 (R. at 71); (6) a U.S. Coast Guard "Certificate of Service" (the Court notes that this copy is barely legible) (R. at 72); (7) a "Certificate of Graduation" from the U.S. Maritime Service Training Station dated August 28, 1945 (R. at 73); (8) a U.S. Maritime Service "Release from Active Duty" form that notes that the appellant had enrolled on July 3, 1945, and had "been released from active duty" on August 28, 1945, and "placed in an inactive status in the United States Maritime Service" (R. at 74); and (9) a "Certificate of Substantially Continuous Service" in the U.S. Merchant Marine that reflects that the appellant "ha[d] completed a period of substantially continuous service in the United States Merchant Marine . . . commenc[ing] on July 3, 1945[,] and terminat[ing] on July 3, 1947" (R. at 75). He also provided at the hearing a document that he had prepared summarizing his

service, including training at the Maritime Training School in Sheepshead Bay, New York, New York, beginning on July 5, 1945; oceangoing training from July 25, 1945, to August 2, 1945; deck training beginning on August 2, 1945; being sworn into the Coast Guard on August 14, 1945; one week at the Virginia Maritime Discharge Station beginning on August 21, 1945; and his having joined the crew of the *Lake Charles Victory* troop ship on August 28, 1945.  R. at 68.

In a July 2001 Supplemental SOC (SSOC), the RO found that the appellant "cannot be recognized as a veteran in connection with a claim for VA compensation."  R. at 82.  The RO stated that the VPEA had not amended the definition of "active duty" as recognized in § 401.  R. at 83; Public Law 95-202 § 401.  The RO found that, although the appellant "obviously did enlist in the Merchant Marine before [August 15, 1945]", his training extended from his date of enlistment until August 28, 1945, and, thus, he did not serve on active-duty service on the high seas between December 7, 1941, and August 15, 1945, and had not established veteran status.  R. at 82-83.

In the March 2002 BVA decision here on appeal, the Board denied to the appellant basic eligibility for VA benefits.  R. at 1-6.  The Board noted that the appellant's VA Form 9 and his DD Form 214 reflected that he had served in the Merchant Marine from August 28, 1945, through December 31, 1946, but stated that under 38 C.F.R. § 3.7(x)(14) and (15) (2001), only "[U.S.] Merchant Seamen who served on blockade ships in support of Operation Mulberry during [WW II] and American Merchant Marines in Oceangoing Service during the period of armed conflict between December 7, 1941, and August 15, 1945, are considered to have had active service."  R. at 3-4.  The Board concluded that the appellant's service between August 28, 1945, and December 31, 1946, did not establish active-duty service for status as a "veteran".  R. at 4 (quoting 38 U.S.C. § 101(2)).

The Board discussed the May 2001 RO hearing and noted that the argument presented there by the appellant's representative regarding recent legislation expanding the eligibility period for active-duty service appeared to refer to 46 U.S.C. §§ 11201 and 11202 (providing eligibility for veterans' burial and cemetery benefits).  *Ibid.* (referring mistakenly to title 38 instead of title 46).  The Board acknowledged that the appellant had submitted additional documents at that hearing; however, (1) as to the appellant's contention that he had served in the U.S. Coast Guard for one day on August 14, 1945, the Board rejected that contention on the ground that the submitted identification document failed to "establish or suggest" that he had served on that day and (2) as to

4

the appellant's contention that he had oceangoing service for three weeks in July 1945, the Board rejected that contention on the ground that "there is no certificate of discharge documenting such service, and it appears that during the time period in question [he] was undergoing training." R. at 5. The Board determined that "the largest obstacle confronting the appellant" was that his DD Form 214 reflected service dates from August 28, 1945, to December 31, 1946, because under 38 C.F.R. § 3.14(d) (2001) "determinations by the service department as to the veteran's honorable service will be binding on VA." R. at 5.

## II.  Contentions on Appeal

In his initial brief, the appellant contends that the March 2002 BVA decision should be reversed as clearly erroneous because the Board relied on 38 C.F.R. § 3.7(x)(15), which should be invalidated to the extent that it (1) limits potential title-38-benefits eligibility for service in the Merchant Marine to those who served from December 7, 1941, through August 15, 1945; (2) contradicts § 401, which "authorize[s] the Secretary of Defense to determine [only] whether [WW II] service of the Merchant Marine, as a group, was entitled to be considered as active military service" and not to establish the dates of such service within the overall period of war; and (3) contradicts 38 U.S.C. § 101(8), which defines WW II as the period from December 7, 1941, to December 31, 1946. Brief (Br.) at 5-15, 17-18. The appellant argues that once the Secretary of Defense determines that, as applicable here, a WW II group meets the criteria for active-duty service certification, he has no further authority to restrict the eligibility period for active-duty service to be less than that contained in section 101(8)'s definition of WW II, particularly when the intent of Congress was clearly set forth in Public Law 95-202, § 401, which, the Secretary points out, specifies that recognized groups "'shall be considered active duty for the purpose of all laws administered'" by VA. Br. at 11-14 (emphasis in Brief); *see also* Reply Br. at 6-9. He also asserts that the Board conceded that he had active-duty service prior to December 31, 1946, and, therefore, he should be granted "veteran" status and his claim for a hearing-loss disability should be remanded to the RO for development and adjudication in the first instance. Br. at 18.

In the alternative, if the Court determines that § 3.7(x)(15) is valid, the appellant argues that the March 2002 BVA decision should be vacated and the matter remanded because the Board (1) misconstrued § 3.14(d), which does not apply to the issue whether he has established veteran

status; (2) failed to consider his service between July 3, 1945, when he enlisted in the Merchant Marine, and August 15, 1945; (3) failed to determine whether his DD Form 214 accurately reflected his service dates; and (4) failed to address whether his July 1945 service may be construed as "active[-]duty service" for establishing veteran status. Br. at 6, 15-16, 18; Appellant's August 17, 2003, Errata at 1.

The Secretary argues in his brief that the Court should affirm the March 2002 BVA decision because (1) the Department of Defense (DoD) "conclusively found" that the period of the appellant's active-duty service in the Merchant Marine was not within the eligibility period defined by the DoD and by VA in § 3.7(x)(15) and (2) § 3.7(x)(15) is valid. Br. at 2, 7. The Secretary notes that the DoD informed the appellant that it recognized his active-duty service from August 28, 1945, to December 31, 1946, only as to eligibility for burial and interment benefits under 46 U.S.C. §§ 11201 and 11203, and the Secretary argues that the appellant is not eligible for benefits under Public Law 95-202 § 401. Br. at 7-8. He contends (1) that the evidence reflects that August 28, 1945, was the date that the appellant ended his Maritime Service training and became a seaman on the *Lake Charles Victory* and (2) that the DoD recognizes only active-duty service for the appellant from August 28, 1945, to December 31, 1946, as is consistent with a January 1982 DoD regulation stating that trainees in the "Maritime Service" should not receive active-duty recognition. Br. at 7-8, 14 (citing 47 Fed. Reg. 6,916, 6,916 (Feb. 17, 1982) (determining, inter alia, that service in U.S. Maritime Service Training Organization could "not be considered active military service")).

The Secretary asserts that, although the appellant submitted additional documents, "no further VA inquiry is warranted here because the DD[ Form 214] is and should be dispositive as to [the a]ppellant's dates of service." Br. at 8-10 (citing *Schumacher v. Aldridge*, 665 F. Supp. 41 (D.D.C. 1987), and *Fogel v. Dep't of Def.*, 169 F. Supp. 2d 140 (E.D.N.Y. 2001), *aff'd*, 36 Fed.Appx. 473 (2d Cir. 2002), and requesting that the Court take judicial notice of these decisions). He rejects what he characterizes as an "assumption" by the appellant that § 3.7(x)(15) authorizes benefits only for WW II service activities and argues (1) that Congress did not intend Public Law 95-202 § 401 to limit benefits to WW II participants and (2) that § 401 applies to "'similarly situated' groups irrespective of the period of 'combat' in which they served." Br. at 11-14. He further asserts that there is "no articulable conflict between" § 3.7(x)(15) and section 101(8) because the DoD has the authority to designate groups for active-duty-service recognition, including the authority to designate

6

subgroups, and VA promulgated § 3.7(x)(15) to adopt the DoD's recognition of a "discrete Merchant Mariners subgroup" that served between December 7, 1941, and August 15, 1945. Br. at 12; Public Law 95-202 § 401.

In his reply brief, the appellant argues that the Secretary has mischaracterized his argument regarding the validity of § 3.7(x)(15) and that the appellant is not asserting that § 401 is limited to WW II civilians who may be recognized as having served on "active duty"; rather, the appellant contends that the Secretary may not limit the potential eligibility period for WW II active-duty service to be less than that defined in section 101(8). Reply Br. at 2-5; Public Law 95-202 § 401. He further contends (1) that § 3.14(d) does not "require that VA accept [his DD Form 214] as conclusively establishing the date of commencement of service" and notes that official documentation from the War Shipping Administration and the Merchant Marine demonstrates that he joined the Merchant Marine on July 3, 1945, and was sworn in two days later and (2) that the Board erred by not considering official documents reflecting those dates. Reply Br. at 9-12; R. at 74-75. The appellant also maintains that *Fogel*, *supra*, as cited by the Secretary in his brief, is not binding authority for this Court because "its [purported] holding is dict[um]" and that, in any event, the facts make *Fogel* distinguishable because there, unlike the facts in the instant case, the plaintiff belonged to the Maritime Service Training Organization, a subgroup of the Merchant Marine. Reply Br. at 12-14.

### III. Analysis
#### A. Preliminary Matters

As an initial matter, the appellant has clarified in his reply brief, and through counsel at oral argument, his position regarding the applicability of Public Law 95-202 § 401 to groups who participated in WW II as well as in other periods of conflict; the Court agrees with both parties that nothing in § 401 indicates that its application is limited only to groups that qualify for active-duty service during WW II. Reply Br. at 2-5; Secretary's Br. at 11-13; Public Law 95-202 § 401; *see Chevron, U.S.A.*, *Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (holding that reviewing court "must give effect to the unambiguously expressed intent of Congress" where Congress has by statute directly addressed issue); *Lee (Raymond) v. West*, 13 Vet.App. 388, 394 (2000) (citing caselaw for principle that plain meaning of statute controls unless it contradicts

drafters' clearly expressed intent). The Court also notes that the Secretary cites two cases, *Fogel* and *Schumacher*, both *supra*, as examples of courts' determining "whether [the] DoD properly denied military recognition to several Merchant Marine subgroups active during [WW II]" and urges the Court to take judicial notice of these cases. Br. at 9-10. The Secretary concedes that the Board did not cite to either case, but argues that "any error resulting from the omission is harmless because [the a]ppellant's dates of DoD-recognized service confirm that he is not and cannot be eligible for the benefit he seeks as a matter of law." Br. at 10.

Although the Court may take judicial notice of facts not in dispute, *see Smith (Brady) v. Derwinski*, 1 Vet.App. 235, 238 (1991), and the existence of the *Schumacher* and *Fogel* cases is a fact of which the Court can take notice, *Schumacher*, *supra*, was decided by the U.S. District Court for the District of Columbia, and *Fogel, supra*, was decided by the U.S. District Court for the Eastern District of New York and the U.S. Court of Appeals for the Second Circuit, and the law of those jurisdictions is not binding on this Court. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (noting that decisions of the U.S. Court of Appeals for the Federal Circuit are binding on this Court). In addition, the Court agrees with the appellant that the language in *Fogel* to which the Secretary points is clearly dictum because the court there held that the suit was barred by a statute of limitations. *Fogel*, 169 F. Supp. 2d at 149-50. The court in *Schumacher*, *supra*, did address in part granting active-duty-service status to members of the Merchant Marine who had participated in military invasions during WW II; however, the appellant here is not asserting participation in military invasions. As to the court's discussion in *Schumacher* of active-duty-status eligibility for members of the Merchant Marine serving "in oceangoing service from December 7, 1941, to December 31, 1946", although the court held that the Secretary's denial of the application by members of the Merchant Marine was invalid because it relied on "unstated and vague criteria", it also determined that it could not decide, based on the ROA, whether "denial of that application either in whole or in part would necessarily constitute an abuse of discretion" and ordered the parties to file supplemental memoranda regarding an appropriate remedy. *Schumacher*, 665 F. Supp. at 46-47.

### B. Applicable Law and Regulation

"In order to qualify for VA benefits, a claimant . . . or the party upon whose service the claimant predicates the claim . . . [must be] a 'veteran.'" *Cropper v. Brown*, 6 Vet.App. 450, 452 (1994) (citing *Aguilar v. Derwinski*, 2 Vet.App. 21 (1991)); *see D'Amico v. West*, 209 F.3d 1322,

1327 (Fed. Cir. 2000) (rejecting this Court's reasoning in *Laruan v. West*, 11 Vet.App. 80, 86 (1998) (en banc), that "'Congress could not have intended that persons without requisite veteran status would benefit from the statutory presumptions and enactments reserved for veterans'", which reasoning the Court had also employed to hold in *Laruan* that claimant must show "veteran" status by preponderance of evidence). A veteran is defined as "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C. § 101(2); *see* 38 C.F.R. § 3.1(d) (2001 & 2003). Service in the active military, naval, or air service includes, inter alia, service in the U.S. Armed Forces. *See* 38 U.S.C. §§ 101(10) (in pertinent part defining "Armed Forces" as "United States Army, Navy, Marine Corps, Air Force, and Coast Guard"), 101(21)(A) (in pertinent part defining "active duty" as "full-time duty in the Armed Forces"), 101(24)(A) (in pertinent part defining "active military, naval, or air service" as including "active duty"). Merchant Marines are not included in the statutory definition of Armed Forces. *See* 38 U.S.C. § 101(10). Thus, the appellant is not eligible for veterans benefits unless he (1) had full-time duty in the Coast Guard or (2) is a member of a group of the Merchant Marine that has been recognized in a legislative or regulatory provision as being eligible for veterans benefits.

Regarding whether the appellant's service with the Merchant Marine has been recognized as constituting active military service, a full examination of the applicable legislative and regulatory provisions is necessary. On November 23, 1977, Public Law 95-202 was enacted, and in § 401 Congress provided the Secretary of Defense with authority, after consideration of factors listed in the statute, to designate the service of certain groups, which are "similarly situated" to the Women's Air Forces Service Pilots group and which rendered service to the U.S. Armed Forces, as "active duty for the purposes of all laws administered by the Secretary of Veterans Affairs". Public Law 95-202 § 401(a)(1) (as amended by Public Law 102-83, § 6(b), 105 Stat. 407 (1991)); *see Pacheco v. West*, 12 Vet.App. 36, 37 (1998) (discussing laws and regulations regarding recognition of certain limited Merchant Marine service as active-duty service for purpose of VA benefits). Pursuant to Public Law 95-202 § 401, the Secretary of Defense promulgated regulations establishing the criteria for determining whether a group meets the requirements for active-duty-service consideration, 32 C.F.R. § 47.2 *et seq.* (2003), and delegating to the Secretary of the Air Force the authority to determine whether certain groups so qualify, 32 C.F.R. § 47.5(b)(8) (2003). Thereafter, the Secretary of the Air Force made a determination on January 19, 1988, that "the service of the 'American

Merchant Marine in Oceangoing Service during the Period of Armed Conflict, December 7, 1941, to August 15, 1945,' shall be considered 'active duty' for the purposes of all laws administered by [VA]."  53 Fed. Reg. 2,775, 2,775 (Feb. 1, 1988).  To be eligible for VA benefits under this determination, each claimant is required to demonstrate by the following eligibility criteria that he or she:

> 1.  Was employed by the War Shipping Administration or Office of Defense Transportation or their agents as a merchant seaman documented by the U.S. Coast Guard or Department of Commerce (Merchant Mariner's Document/Certificate of Service), or as a civil servant employed by the U.S. Army Transport Service . . . or the Naval Transportation Service; and
>
> 2. **Served satisfactorily as a crew member during the period of armed conflict, December 7, 1941, to August 15, 1945, aboard**
>
> (a) **Merchant vessels in oceangoing, i.e., foreign, intercoastal, or coastwise service** . . . and further to include "near foreign" voyages between the United States and Canada, Mexico, or West Indies via ocean routes, or
>
> (b) Public vessels in oceangoing service or foreign waters.

53 Fed. Reg. at 2,775 (boldface italics emphasis added).

Based on the above determination, VA amended its regulation § 3.7, by adding paragraph (x)(15), to include recognition of veteran status for certain members of the Merchant Marine who qualified for active-duty service.  53 Fed. Reg. 16,875, 16,875 (May 12, 1988) (stating that VA public notice and comment period for regulation was "impracticable and unnecessary" and explaining that "VA has no discretion in this matter" because decision of Secretary of Air Force regarding establishment of active-duty service was "binding on . . . VA"); *see* 38 U.S.C. § 501(a) (Secretary has "authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws").  VA regulation § 3.7(x)(15) provided, and currently provides, in pertinent part:

> (x) *Active military service certified as such under section 401 of Pub. L. 95-202.*  Such service **if certified by the Secretary of Defense as active military service and if a discharge under honorable conditions is issued by the Secretary [of Defense]**.  The effective dates for an award based upon such service shall be as

provided by § 3.400(z) and 38 U.S.C. [§] 5110, except that in no event shall such an award be made effective earlier than November 23, 1977. ***Service in the following groups has been certified as active military service***.

. . . .

(15) ***American Merchant Marine in Oceangoing Service during the Period of Armed Conflict, December 7, 1941, to August 15, 1945.***

38 C.F.R. § 3.7(x)(15) (2001 & 2003) (boldface italics emphasis added). On September 2, 1999, the Secretary of the Air Force made the following determination:

On August 11, 1999, the Secretary of the Air Force, acting as Executive Agent of the Secretary of Defense, determined that the service of the group known as "American Merchant Marine Mariners Who Were in Active Ocean-Going Service" during the period of August 15, 1945[,] to December 31, 1946, shall ***not*** be considered "active duty" under the provisions of Public Law 95-202 for the purposes of all laws administered by [VA].

64 Fed. Reg. 48,146, 48,146 (Sept. 2, 1999) (emphasis added).

In order for this Court to reverse a BVA decision on a finding of fact, we must find that the BVA decision was "clearly erroneous". 38 U.S.C. § 7261(a)(4). Under this deferential standard, if there is a "'plausible' basis" in the record, "'viewed in its entirety'", for the factual determinations of the BVA, the Court cannot overturn them. *Gilbert v. Derwinski*, 1 Vet.App. 49, 52-53 (1990) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)); *see also Hurd v. West*, 13 Vet.App. 449, 451 (2000); *Harder v. Brown*, 5 Vet.App. 183, 189 (1993) (citing *Karnas v. Derwinski*, 1 Vet.App. 308, 311 (1991), *overruled in part by Kuzma v. Principi,* 341 F.3d 1327, 1328-29 (Fed. Cir. 2003)); *Barnhill v. Brown*, 5 Vet.App. 75, 77 (1993); *cf. Mariano v. Principi*, 17 Vet.App. 305, 313 (2003) (holding that, under section 7261(a)(4) and (b)(1), Court reviews as factual determination Secretary's application of "equipoise standard" under 38 U.S.C. § 5107(b)).

Under 38 U.S.C. § 7104(a) and (d)(1), the Board is required to consider and discuss in its decisions all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 592-93 (1991); *see* 38 U.S.C. § 7104(a), (d)(1); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The Board

is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57. To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

### C. Validity of 38 C.F.R. § 3.7(x)(15)

The appellant seeks reversal, arguing that § 3.7(x)(15) is invalid under the applicable statutory scheme. At oral argument, counsel for the appellant clarified that the appellant is challenging only § 3.7(x)(15) and not any regulations promulgated by the Secretary of the Air Force or the Secretary of Defense. Hence, on this question, we consider here only whether § 3.7(x)(15) is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right." 38 U.S.C. § 7261(a)(3)(A), (C).

The limited eligibility period for active-duty service contained in § 3.7(x)(15) reflects the limited period previously determined by the Secretary of the Air Force, who has general authority, as delegated by the Secretary of Defense, to designate groups for purposes of active-duty service under Public Law 95-202 § 401. *See* 64 Fed. Reg. at 48,146; 53 Fed. Reg. at 2,775. The Court holds that the VA's promulgation of § 3.7(x)(15), including eligibility dates of December 7, 1941, to August 15, 1945, was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right." 38 U.S.C. § 7261(a)(3)(A), (C). In promulgating that regulation, VA was bound by the eligibility period regarding active-duty status determined by the Secretary of the Air Force. *See* Pub. L. 95-202 § 401. Moreover, even if the Court were to invalidate § 3.7(x)(15), such action would not affect the certification of the group covered by that regulation under § 401 because the VA has no authority to reject or alter DoD's certification under that statute. *See* 53 Fed. Reg. at

12

16,875 (describing regulations regarding active-duty status issued by Secretary of Air Force as being "binding on . . . VA"); *see also Soria v. Brown*, 118 F.3d 747, 749 (Fed. Cir. 1997) (concluding that in matters requiring service department certification "VA has long treated the service department's decision on such matters as conclusive and binding on . . . VA"); *Duro v. Derwinski*, 2 Vet. App. 530, 532 (1992) (holding that "service department findings are binding on VA for purposes of establishing service in the U.S. Armed Forces").

As to the relevance of the definition of WW II in 38 U.S.C. § 101(8), the appellant's counsel at oral argument asserted that the parenthetical in Public Law, § 401(a)(1), which refers to "a group of Federal civilian employees attached to the United States Army Air Force *during* [*WW II*]" and follows the phrase "a member of the Women's Air Forces Service Pilots", implicates the term "[WW II]" as defined by Congress in section 101(8), when determining an award of a VA benefit, even if § 401 does not apply until after a claimant is granted veteran status through the VA claims process. Public Law 95-202 § 401(a)(1) (emphasis added). However, § 401, unlike section 101(8), is not a part of title 38 of the U.S. Code. Therefore, any analysis under section 101(8) can take place only *after* it has been determined that a claimant has met the criteria under § 401 of being a member of a certified class who has been issued a DoD discharge reflecting service dates associated with that certified class and VA is then applying title 38 provisions to determine eligibility for VA benefits under that title. That is, the general definition contained in section 101(8) for the recognized WW II period of December 7, 1941, to December 31, 1946, does not define eligibility dates for active-duty service in accordance with § 401, but instead defines the term WW II for purposes of VA laws and regulations, and has no operative effect here. *Cf. Hamilton (Stanley) v. Brown*, 4 Vet.App. 528, 536 (1993) (en banc) (noting that "[d]efinitions, whether statutory or regulatory, are not themselves operative provisions of law") (citing NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 27.02, at 459 (4th ed. 1985)).

Regardless whether § 3.7(x)(15) is valid, the appellant must meet DoD's certification criteria under Public Law 95-202 § 401. Section 401 provides in pertinent part:

> (a)(1) Notwithstanding any other provision of law, the service of any person as a member of the Women's Air Forces Service Pilots (a group of Federal civilian employees attached to the United States Army Air Force during World War II), or the service of any person in any other similarly situated group the members of which rendered

13

service to the Armed Forces of the United States in a capacity considered civilian employment or contractual service at the time such service was rendered, ***shall be considered active duty*** for the purposes of all laws administered by the Secretary of Veterans Affairs ***if the Secretary of Defense***, pursuant to regulations which the Secretary shall prescribe –

(A) after a full review of the historical records and all other available evidence pertaining to the service of any such group, ***determines, on the basis of judicial and other appropriate precedent, that the service of such group constituted active military service***, ***and***

(B) in the case of any such group with respect to which such Secretary has made an affirmative determination that the service of such group constituted active military service, ***issues to each member of such group a discharge*** from such service under honorable conditions where the nature and duration of the service of such member so warrants.

Discharges issued pursuant to the provisions of the first sentence of this paragraph shall designate as the date of discharge that date, as determined by the Secretary of Defense, on which such service by the person concerned was terminated.

Public Law 95-202 § 401(a)(1)(A), (B) (emphasis added). Accordingly, § 401 provides that, notwithstanding any other provision of law, the service of a member of a group designated by the Secretary of Defense "shall be considered active duty for the purposes of all laws administered by the Secretary of Veterans Affairs *if* the Secretary of Defense . . . shall prescribe" (1) that the service of such group constitutes active duty and (2) that members of that group are to be issued a discharge from "such service under honorable conditions" that shows the date of discharge as determined by the DoD. Public Law 95-202 § 401(a)(1)(A), (B) (emphasis added). Section 401 expressly conditions effective active-duty status for the purpose of VA-administered laws on those two requirements – that the DoD certify a group and issue a discharge. Public Law 95-202 § 401(a)(1)(A), (B); *see Chevron* and *Lee*, both *supra*.

Here, although the Secretary of the Air Force, pursuant to authority delegated by the Secretary of Defense, certified a group of members of the Merchant Marine who demonstrate active-duty service between December 7, 1941, and August 15, 1945, the appellant has not submitted

the required DoD discharge. His DD Form 214 (R. at 9) does not reflect dates associated with the certified group, *see* 53 Fed. Reg. at 2,775, that is, dates that fall within the § 401 eligibility period of December 7, 1941, to August 15, 1945. Although the ROA does not contain a DoD discharge to the appellant as a member of a group certified to have performed active duty with the U.S. Armed Forces pursuant to Public Law 95-202 § 401, based on other evidence in the ROA and deficiencies in the Board decision on review, as discussed in part III.E.2, below, it is premature for the Court to determine whether the Board's denial of the appellant's claim for qualifying service based on his service in the Merchant Marine was "clearly erroneous" under 38 U.S.C. § 7261(a)(4).

### D. Board's Concession of Active-Duty Service

The appellant next argues for reversal on the ground that the Board conceded that he participated in active-duty service in the Merchant Marine before December 31, 1946, and that, therefore, by virtue of the section 101(8) definition of WW II he should be granted "veteran" status and his claim for a hearing-loss disability should be remanded to the RO for development and adjudication in the first instance. Br. at 18; *see* Br. at 15-16 (citing R. at 5). The Court rejects the appellant's argument about the significance of the Secretary's concession that the appellant had active-duty service before December 31, 1946, based on his DD Form 214's having listed active-duty service dates of August 28, 1945, to December 31, 1946, because the issue on appeal as to Merchant Marine service is whether the appellant had active-duty service in the Merchant Marine before August 15, 1945; neither the Board nor the Secretary concede that matter. Thus, the Board's decision was not "clearly erroneous" in light of the Secretary's concession. 38 U.S.C. § 7261(a)(4); *see Hurd*, *Harder*, *Barnhill*, and *Gilbert*, all *supra*; *cf. Mariano*, *supra*.

### E. Determination of Eligibility Dates for Active-Duty Service

Finally, the appellant argues that the Board decision should be reversed on the ground that the Board failed to consider all documents in the ROA when it determined that he did not qualify for active-duty service. As noted above, the appellant may be eligible for veterans benefits if he (1) had full-time duty in the Coast Guard or (2) is a member of a group of Merchant Marines that has been recognized in a legislative or regulatory provision as being eligible for veterans benefits.

***1. Eligibility for Veterans Benefits Based on Full-time Duty in the U.S. Coast Guard***: In determining whether the appellant had full-time duty in the Coast Guard, VA regulation § 3.203(a) provided, inter alia, at the time of the March 2002 Board decision, and currently provides, that in

15

order to establish such full-time duty,

> [VA] may accept evidence of service . . . such as a DD Form 214, Certificate of Release or Discharge from Active Duty, or original Certificate of Discharge, without verification from the appropriate service department if the evidence meets the following conditions:
>
> (1) The evidence is a document issued by the service department. A copy of an original document is acceptable if the copy was issued by the service department or if the copy was issued by a public custodian of records who certifies that it is a true and exact copy of the document in the custodian's custody or, if the copy was submitted by an accredited agent, attorney or service organization representative who has successfully completed VA-prescribed training on military records, and who certifies that it is a true and exact copy of either an original document or of a copy issued by the service department or a public custodian of records; and
>
> (2) [t]he document contains needed information as to length, time[,] and character of service; and
>
> (3) [i]n the opinion of [VA] the document is genuine and the information contained in it is accurate.

38 C.F.R. § 3.203(a)(1), (2), (3) (2001 & 2003). Absent the submission of evidence that meets the requirements of § 3.203(a), VA "shall request verification of service from the service department." 38 C.F.R. § 3.203(c). Moreover, findings by the service department as to full-time duty service for veterans benefits "are binding on VA for purposes of establishing service in the U.S. Armed Forces." *Duro, supra*.

The Board's statement of reasons or bases in the instant case is deficient in several respects. The Board failed to address certain evidence that the appellant submitted pertaining to his possible service in the U.S. Coast Guard. Specifically, although the Board considered the appellant's Certificate of Graduation from the U.S. Maritime Service Training Station, U.S. Coast Guard Merchant Seaman's Certificate of Identification, and Record of Service, the press release from Senator Lott's office, and "documents from the Merchant Marine", it explained only why it rejected the U.S. Coast Guard Merchant Seaman's Certificate of Identification and the appellant's claim of three weeks of oceangoing service in July 1945 without discussing the other documents in the record. R. at 4-5. The Board failed to explain the reasons for apparently rejecting the other documents

16

described above, which include the U.S. Coast Guard Certificate of Service (R. at 72). Moreover, the Board failed to address § 3.203 and the appellant's option to submit copies of original documents issued by a service department in lieu of or in addition to a DD Form 214. Further, the Board did not determine whether, pursuant to § 3.203(a)(1), documents other than the appellant's DD Form 214 – the documents identified above, including the appellant's U.S. Maritime Service Release from Active Duty (R. at 74) or his Certificate of Substantially Continuous Service (R. at 75) – constituted "evidence of service" that was "issued by the service department" (that is, the U.S. Coast Guard). 38 C.F.R. § 3.203(a)(1); *see Soria* and *Duro*, both *supra*.

In addition, the Board's statement that "the largest obstacle confronting the appellant in this case is the fact that his DD [Form] 214 reflects service from August 28, 1945[,] to December 31, 1946" (R. at 5), seems to suggest, as the Secretary argues in his brief, that a claimant's DD Form 214 "is and should be dispositive as to [the a]ppellant's dates of service." Br. at 8. This conclusion, however, contradicts the plain meaning of § 3.203(a) that evidence of service may be demonstrated by documents "***such as*** a DD Form 214" (38 C.F.R. § 3.203(a) (emphasis added)); the regulation in no way limits such evidence to the DD Form 214 or characterizes it as "dispositive". Accordingly, the Court concludes that the Board failed to consider adequately "all . . . applicable provisions of law and regulation" and to provide an adequate statement of reasons or bases for its decision. 38 U.S.C § 7104(a), (d)(1); *see Allday* and *Gilbert,* both *supra*.

Here, VA erred in not making an additional request seeking verification of service following the submission by the appellant of additional documents to the RO at the May 2001 hearing. *See* 38 U.S.C. § 5103A(a)(1) (providing that "[t]he Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary"), (b)(3) (Secretary must continue efforts to obtain records of other federal agencies "unless it is reasonably certain that such records do not exist or that further efforts to obtain those records would be futile"), (c)(1) (providing that Secretary shall obtain, inter alia, "relevant records pertaining to the claimant's active military, naval, or air service that are held or maintained by a governmental entity" if such records are relevant to claim for disability compensation), (g) (not precluding Secretary from "providing such other assistance under subsection (a) to a claimant in substantiating a claim as the Secretary considers appropriate"); 38 C.F.R. § 3.159(c)(1) (2002) (requiring VA to make "at least one follow-up request" for relevant records not

17

in custody of Federal department or agency unless "a response to the initial request indicates that the records sought do not exist or that a follow-up request for the records would be futile"); *Charles v. Principi*, 16 Vet.App. 370, 374-75 (2002). On remand, in the event that the Board rejects these documents on the basis that they do not satisfy the requirements of 38 C.F.R. § 3.203(a), then, pursuant to 38 C.F.R. § 3.203(c), VA is required to request or obtain verification from the service department as to whether the appellant had full-time service in the U.S. Coast Guard at any time. *See* 38 C.F.R. § 3.203(c); *see also* 38 U.S.C. § 5103A(a)(1), (b)(3), (c)(1), (g); *Sarmiento v. Brown*, 7 Vet.App. 80, 85 (1994) (holding that, under 38 C.F.R. § 3.203(c), when a claimant supplies new identifying information (e.g., different spelling of name), VA must submit additional request for verification of service), *overruled on other grounds by D'Amico*, *supra*.

Furthermore, the Board did not address whether the appellant's training aboard the American Navigator before August 15, 1945, qualified as active service with the U.S. Coast Guard. *See* R. at 1-6. The appellant argues that his July 1945 assignment aboard that ship should be construed as active duty. Br. at 17. The Secretary contends that the appellant's training with the Maritime Service Training Organization during that time does not constitute active military service and that the DoD previously determined that the activities of this Maritime Service school did not constitute active military service under Public Law 95-202 § 401. Br. at 9, 14 (citing 47 Fed. Reg. 6916 (Feb. 17, 1982)). The appellant responds that he is not a member of the Maritime Service Training Organization, which is a subgroup of the Merchant Marine responsible for operating the various Merchant Marine training schools. Reply Br. at 13. The Court notes that the appellant's Certificate of Graduation (R. at 73) appears to have been issued by a U.S. Maritime Service Training Station, but there appears to be no evidence in the ROA suggesting that he is a member of the group known as the Maritime Service Training Organization. *See* R. at 1-93. The Board must address this matter on remand.

*2. Eligibility for Veterans Benefits Based on Service in the Merchant Marine*: The appellant's DD Form 214 reflects dates of service in the Merchant Marine from August 28, 1945, through December 31, 1946 (R. at 9), and the Board concluded that, because this DD Form 214 does not reflect dates of service in the Merchant Marine that the Secretary of Defense has certified (i.e., between December 7, 1941, and August 15, 1945) the appellant's service did not constitute active military service for purposes of VA benefits. R. at 5. The Court concludes that the Board did not

18

address adequately whether, in light of the documents submitted by the appellant possibly reflecting dates of Merchant Marine service prior to August 16, 1945 (*see e.g.*, R. at 70, 72, 75; *see also* R. at 71 (Record of Service noting appellant's transfer to American Navigator in July 1945)), VA had reconciled those documents with the DD Form 214 issued by the Secretary of Defense; nor does it appear that VA requested that the Secretary of Defense reconcile those documents with the DD Form 214. *See* 38 U.S.C. § 5103A(a)(1), (b), (g); 53 Fed. Reg. at 2,775 (providing that for purposes of eligibility for veterans benefits, Merchant Marine service requires, inter alia, having "[s]erved satisfactorily as a crew member during the period [from] December 7, 1941, [through] August 15, 1945, aboard . . . [m]erchant vessels in oceangoing . . . service"). The Court notes that to the extent that the appellant is arguing that he had "oceangoing service" during the eligibility period of § 3.7(x)(15) based on his training aboard the American Navigator in July 1945 and is thus a member of the group of Merchant Marines that has been considered as having active duty and recognized as being eligible for veterans benefits, the appellant must show that the DoD issued a discharge to him as a member of such group of Merchant Marine. 38 C.F.R. § 3.7(x)(15); *see* Public Law 95-202 § 401.

Further, with respect to the Board's reliance on the appellant's DD Form 214, the Court notes that it is unclear whether that form was issued solely for the purpose of establishing dates of active-duty service for eligibility for cemetery and burial benefits pursuant to VPEA § 402, or whether it was issued after taking into consideration all service dates and certified the appellant's service as qualifying for *only* these limited benefits. *See* VPEA § 402; 46 U.S.C. §§ 11201, 11202 (providing eligibility for cemetery and burial benefits under title 38 of U.S. Code to member of U.S. Merchant Marine if member engaged in qualified service during period from August 16, 1945, through December 31, 1946); 38 U.S.C. §§ 2301-2308 (burial benefits); 38 U.S.C. §§ 2400-2411 (national cemeteries and memorials); R. at 9 (DD Form 214). The Court notes that if the DD Form 214 was issued for the limited purpose of establishing eligibility for burial and cemetery benefits the form apparently would have documented only service on or after August 16, 1945. Thus, in light of that possible limited purpose of the DD Form 214, the Court concludes that the Board should not have relied on it (or the absence in the record of any other DD Form 214s) to conclude that the appellant's service in the Merchant Marine did not constitute "active duty," 53 Fed. Reg. at 2,775, for purposes of veterans benefits. Accordingly, the Board's statement of reasons or bases is

inadequate in this respect as well. *See* 38 U.S.C. § 7104(d)(1); *Allday* and *Gilbert*, both *supra.* On remand, the Board must address and resolve this question to the best of its ability.

  ***3. Eligibility for Veterans Benefits Determination***:  In light of the above analysis regarding eligibility for veterans benefits based both on full-time duty in the U.S. Coast Guard and on service in the U.S. Merchant Marine, it is unclear whether the Board properly considered all documents before it, and it would thus be premature for the Court to determine whether the Board's denial of the claim for qualifying service was "clearly erroneous" under 38 U.S.C. § 7261(a)(4); it is the Board's responsibility to weigh the evidence in the first instance.  *See Caldwell v. Derwinski*, 1 Vet.App. 466, 469-70 (1991); *cf. Mariano*, *supra*. Accordingly, the Court will vacate the BVA decision and remand the matter for further development and readjudication consistent with this opinion in order for the Board to direct the RO to determine the appellant's dates of active-duty service, including determinations regarding whether the appellant's participation in training constituted active-duty service in the U.S. Coast Guard, whether the additional documents submitted by him at the May 2001 RO hearing conform to the requirements of § 3.203(a) and constitute "evidence of service" in the U.S. Coast Guard.  *See* 38 U.S.C. §§ 5103A, 7104(a), (d)(1); 38 C.F.R. §§ 3.159(b), (c), 3.203; *Soria*, *Weaver*, *Sarmiento*, *Duro*, *Sanden*, and *Schafrath*, all *supra*.  In the event that the Board rejects the documents on the basis that they do not satisfy the requirements of 38 C.F.R. § 3.203(a), the Secretary must comply with 38 C.F.R. § 3.203(c), which requires VA to request verification from the service department as to whether the appellant had full-time service in the U.S. Coast Guard at any time.  *See* 38 C.F.R. § 3.203(c); 38 U.S.C. § 5103A(a)(1), (b)(3), (c)(1), (g).

  Furthermore, on remand the Board must ensure compliance with the amendments made by the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096.  *See* 38 U.S.C. §§ 5100-5103, 5103A, 5106, 5107; *Fortuck v. Principi*, 17 Vet.App. 173, 181 (2003); *Charles*, 16 Vet.App. at 374; *Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002).  In this regard, VA must help the appellant obtain legible copies of his U.S. Coast Guard Merchant Seaman's Certificate of Identification (R. at 70) and U.S. Coast Guard Certificate of Service (R. at 72).  38 U.S.C. § 5103A(b); 38 C.F.R. § 3.159(c)(2).  The Court notes that, if the appellant is dissatisfied with the contents of a document issued by the appropriate service department, whether a DD Form 214 or other document, his recourse lies with the board for correction of service records within the service

department in question. *See Soria*, *supra* (noting that "if the United States service department refuses to verify the applicant's claimed service, the applicant's only recourse lies within the relevant service department, not . . . VA"); *Duro*, *supra*. VA must also assist the appellant by determining whether his DD Form 214 clearly described the nature of his service or whether it was issued solely to establish active-duty service for the purpose of burial and interment benefits. VA must further request that the Secretary of Defense reconcile the appellant's DD Form 214 with the evidence reflecting his possible service in the Merchant Marine prior to August 16, 1945. *See* 38 U.S.C. § 5103A(a)(1), (b), (c)(1), (g).

## IV. Conclusion

Upon consideration of the ROA, the parties' pleadings, and the foregoing analysis, the Court vacates the March 2002 Board decision and remands the matter for expeditious further development and issuance of a readjudicated decision supported by a statement of reasons or bases that is adequate to the determination of the appellant's status, *see* 38 U.S.C. §§ 1110, 5100-5103, 5103A, 7104(a), (d)(1); Public Law 95-202 §401; 38 C.F.R. §§ 3.7(x)(15), 3.159(b), (c), 3.203; *Fortuck*, *Weaver*, *Sanden*, and *Schafrath*, all *supra*; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this opinion, and in accordance with 38 U.S.C. § 7112 (as added by section 707(b) of the Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 707(b), 117 Stat. 2651, 2673 (Dec. 16, 2003) (requiring Secretary to provide for "expeditious treatment by the Board" for claims remanded by Court)); *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that section 302 of Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658, applies to all elements of claim remanded by Court or Board), and with all applicable law and regulation. *See Allday*, 7 Vet.App. at 533-34. On remand, the appellant will be free to submit additional evidence and argument on the remanded claim, and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). A remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the

date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

VACATED AND REMANDED.